JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| IN RE: ROBERT A. FERRANTE | CASE NO. SA CV 16-337 MWF<br><br>ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER |

Before the Court is an appeal from the United States Bankruptcy Court (the Honorable Theodor C. Albert, United States Bankruptcy Judge). Remar Investments, LP ("Remar") appeals from the bankruptcy court's Order Entering Judgment on Plaintiff Trustee's Fourth Claim, for Declaratory Relief, and Col. Seay's First and Third Claims, for Declaratory Relief, in the Consolidated Complaint, which issued on February 16, 2016 (the "Order"). (Notice of Appeal and Statement of Election at 2 (Docket No. 2)).

Remar submitted its Opening Brief on June 9, 2016. (Docket No. 14). On July 11, 2016, Appellees Lt. Col. William Seay (U.S.M.C. Ret.), a judgment creditor, and Thomas H. Casey, Trustee, separately submitted their Answering Briefs. (Docket Nos. 19, 20). On July 27, 2016, Remar submitted its Reply Brief. (Docket No. 21). The Court has reviewed the papers filed in this appeal and held a hearing on **September 12, 2016**.

1

The Order is **AFFIRMED**. The bankruptcy court applied relevant California law to conclude that Remar had constructive notice of Col. Seay's lien, and therefore took title to the 518 Property subject to Col. Seay's lien.

## I.  BACKGROUND

### A.  Factual Background

In support of its Order, the bankruptcy court relied on the following undisputed facts. On **September 16, 1994**, Debtor Robert A. Ferrante settled a trust, titled the 518 Harbor Island Trust ("518 Trust") as both grantor and trustee. (ER 1568). The 518 Trust claimed to be a Qualified Personal Residence Trust ("QPRT"), with the 518 Property as its sole asset, and stated that it was irrevocable. (*Id.*). The 518 Trust also contained a provision permitting Debtor Ferrante, as settlor, to "acquire all or part of the [518 Property] from the trust immediately prior to the expiration of the trust." (ER 505). In 1997, however, the Department of Treasury revised the regulations pertaining to QPRTs to prohibit QPRT documents from allowing the sale of the residence to the grantor during the QPRT Term. *In re Ferrante*, No. AP 8:12-01330-TA, 2015 WL 5064087 at *9 (9th Cir. B.A.P. Aug. 26, 2015). The regulations permitted the modification of existing QPRTs to bring them into compliance, but required that the reformation "be commenced within 90 days after December 23, 1997 and . . . be completed within a reasonable time after commencement." *Id.* (quoting 26 C.F.R. § 25.2702–5(a)(2)). The 518 Trust was never revised to comply with the 1997 regulations. *In re Ferrante*, No. AP 8:12-01330-TA, 2015 WL 5064087 at *9.

Between 2001 and 2009 the 518 Property was transferred several times between multiple parties. (ER 1569). In 2001, Debtor Ferrante, as trustee of the 518 Trust, granted a deed in the 518 Property to Col. Seay, as trustee for something called "The 518 Harbor Island Trust III" ("Trust III"). (*Id.*). Unlike the 518 Trust, Trust III was made clearly revocable by its terms. The deed was recorded on **March 27, 2001**. (*Id.*).

Col. Seay and Debtor Ferrante subsequently had a falling-out, and Col. Seay was replaced as trustee of Trust III. (*Id.*). On May 4, 2004, Col. Seay obtained a judgment against Debtor Ferrante in a California court for about $2.4 million. (ER 1568; *see also Seay v. Ferrante*, No. G040346, 2009 WL 804936 at *1 (Cal. Ct. App. Mar. 27, 2009)). Col. Seay recorded the abstract of judgment in the Orange County Recorder's office on **May 20, 2004** (the "Seay Lien"). (ER 1568).

By **2006**, a longtime associate of Debtor Ferrante, Debra Martinez, had become trustee of Trust III; and one Oscar Chacon had become trustee of the 518 Trust. (ER 1569). On September 29 of that year, Ms. Martinez, acting as trustee of Trust III, granted the 518 Property to Oscar Chacon, as trustee of the 518 Trust. (*Id.*).

In **2008**, Col. Seay brought a petition in California Probate Court. *Seay*, No. G040346, 2009 WL 804936 at *1. Col. Seay sought to enforce the judgment against Debtor Ferrante by forcing the sale of the corpus of the 518 Trust, *i.e.* the 518 Property. *Id.* The petition was dismissed by the probate court on the motion of Maria Ferrante, Debtor Ferrante's former wife and guardian of three children who were the 518 Trust's remainder beneficiaries. *Id.* On **March 27, 2009**, the California Court of Appeal, in an unpublished opinion, affirmed the probate court's judgment. *Id.* The court held that because the 518 Trust purported to be irrevocable, under California law Debtor Ferrante's subsequent conduct could not convert the 518 Trust into a revocable trust. *Id.* at *5. Nevertheless, Col. Seay properly renewed the judgment in 2010, 2014, and 2015. (ER 1568–69).

On **September 16, 2009**, Remar recorded a deed of trust on the 518 Property, executed by Chacon as trustee of the 518 Trust. (ER 1569). Remar recorded a second deed of trust on the 518 Property on **December 27, 2010**. (*Id.*).

B. **Procedural History**

On **January 11, 2010**, Debtor Ferrante filed for bankruptcy protection. (*Id.*). Although Debtor Ferrante received a discharge in January 2012, the Trustee filed an

3

1 adversary complaint for turnover of estate property, declaratory relief, and
2 revocation of Debtor Ferrante's discharge. *In re Ferrante*, No. AP 8:12-01330-TA,
3 2015 WL 5064087 at *3, *4. The Trustee filed two motions seeking to declare the
4 518 Trust revocable, so that the 518 Property could be sold for the benefit of
5 creditors. *Id.* at *4. Accordingly, the Trustee filed a motion for partial summary
6 judgment, requesting a determination from the bankruptcy court that the 518 Trust
7 was revocable. *Id.* On **March 5, 2014**, the bankruptcy court entered an Order
8 granting partial summary judgment to the Trustee on a number of alternate grounds.
9 *Id.* at *6. Among other things, the bankruptcy court held that the 518 Trust was
10 both revocable and actually terminated because it failed to comply with QPRT
11 regulations. *Id.* at *9.

12       On **August 26, 2015**, the B.A.P. affirmed in an unpublished opinion, holding
13 that "the 518 Trust terminated in 1998 and its terms required distribution of the trust
14 assets, including the 518 Property, to Debtor at that time. As a result, these assets
15 are property of Debtor's bankruptcy estate." *Id.* at *9.

16       Meanwhile, on **June 19, 2015**, Col. Seay had filed a motion for an order
17 establishing the date his judgment lien was perfected. (ER 87). The bankruptcy
18 court determined that the motion was actually a motion for summary judgment and
19 required the parties to undertake the briefing and evidentiary showing necessary to
20 support a summary judgment adjudication under Federal Rule of Civil Procedure 56
21 (made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy
22 Procedure 7056). (ER 404). The bankruptcy court held a hearing on **October 27,**
23 **2015**, after which it determined that Col. Seay's lien was senior to Remar's deed of
24 trust in the 518 Property (the "November 18 Order"). (ER 1566–67).

25       Remar subsequently moved to correct, modify, or strike the bankruptcy
26 court's Order. (ER 1293–1449). Remar sought to clarify whether the bankruptcy
27 court's prior order was intended to encompass the Trust III instrument, the
28 authenticity of which Remar had questioned in a previous motion. (*See* Opening Br.

4

at 9). The bankruptcy court determined that Trust III had been adequately authenticated and entered a final judgment on **February 16, 2016**. (ER 1620–23).

On February 17, 2016, Remar elected to appeal to this Court. (ER 1625).

## II. **JURISDICTION**

Prior to the commencement of briefing on the merits, Col. Seay filed a motion to dismiss Remar's appeal for untimeliness. (Docket No. 9). Col. Seay argued that the bankruptcy court's November 18 Order was a final judgment, and that Remar's February appeal was therefore untimely. (*Id.*). Upon completion of briefing, the Court denied Col. Seay's motion. (Docket No. 18). Col. Seay now raises essentially the same argument in his Answering Brief. (Docket No. 21, at 4–6). The Court concludes that Remar's appeal was timely for the same reasons stated in its Order Denying Respondent's Motion for Order Dismissing Untimely Appeal. (*See generally* Docket No. 18).

The Court has jurisdiction to review final orders of a bankruptcy court under 28 U.S.C. § 158(a)(1).

## III. **STANDARD OF REVIEW**

The Court reviews de novo a bankruptcy court's order granting summary judgment. *Shahrestani v. Alazzeh (In re Alazzeh)*, 509 B.R. 689, 692–93 (B.A.P. 9th Cir. 2014). "An order granting summary judgment will only be affirmed if the evidence, read in the light most favorable to the non-moving party, demonstrates the absence of a genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Aguilera v. Baca*, 510 F.3d 1161, 1167 (9th Cir. 2007) (citation omitted).

The Court reviews the bankruptcy court's alleged evidentiary errors for an abuse of discretion, and the Court should only reverse if it finds "both error and prejudice." *Geurin v. Winston Indus., Inc.*, 316 F.3d 879, 882 (9th Cir. 2002).

## IV. DISCUSSION

The bankruptcy court's Order rests on two major premises:

*First*, the bankruptcy court determined that the Seay Lien automatically attached to the 518 Property at the time it was recorded in 2004. (ER 1571–73).

*Second*, the bankruptcy court determined that Remar had constructive notice of the Seay Lien when it took title to the 518 Property in 2009. (ER 1574–76). Taking these two premises together, the bankruptcy court concluded that the Seay Lien was senior to Remar's deed of trust.

Before addressing Remar's attacks on these premises, the Court must consider Remar's contention that the bankruptcy court (and, subsequently, the Bankruptcy Appellate Panel of the Ninth Circuit) was precluded — under the doctrine of collateral estoppel or "issue preclusion" to use the modern term, *see Taylor v. Sturgell*, 553 U.S. 880, 892 n.5 (2008) — from determining the revocability of the 518 Trust by a previous decision of the California Court of Appeal.

### A. The Bankruptcy Court Was Not Precluded from Determining That the 518 Trust Was Revocable.

The doctrine of issue preclusion aims to prevent the relitigation of issues previously adjudicated in a prior action. *In re Child*, 486 B.R. 168, 172 (B.A.P. 9th Cir. 2013). "The party asserting issue preclusion bears the burden of proof as to all elements and must introduce a sufficient record to reveal the controlling facts and the exact issues litigated." *Id.*

In California, an issue is precluded from further litigation "if (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the previous proceeding resulted in a final judgment on the merits; and (3) the party against whom [preclusion] is asserted was a party or in privity with a party at the prior proceeding." *Rodgers v. Sargent Controls & Aerospace*, 136 Cal. App. 4th 82, 90, 38 Cal. Rptr. 3d 528 (2006), *as modified* (Feb. 7, 2006) (citations and internal marks omitted). Here, the bankruptcy court correctly

concluded that neither the first nor the third prong of the test could be met. (ER 1570–71). The Trustee was not a party to the decision issued by the Court of Appeal. *See Seay*, No. G040346, 2009 WL 804936 at *1. Although Remar argues that the Trustee was bound by the litigation *vis a vis* Debtor Ferrante, Ferrante was also not a party to the decision. Rather, it was Debtor Ferrante's former wife, Maria Ferrante, who moved to dismiss the petition in probate court and pursued the subsequent appeal. *Id.*

      Moreover, the issue on appeal before the Court of Appeal was not the same as the issue facing the bankruptcy court. Col. Seay petitioned the Probate Court "only to declare the trust *invalid*." *Id.* at *3. The Court of Appeal focused primarily on the question of whether Seay was "entitled to reach the [518 Property as judgment creditor] on the theory the irrevocability clause was [a] spendthrift provision invalid against creditors . . . ." *Id.* at *4. The court concluded that the problem with this reasoning was that "a judgment creditor cannot show an irrevocable trust is actually revocable based on subsequent conduct of the settlor." *Id.* In the bankruptcy court, however, Seay and the Trustee argued that the 518 Trust was revocable (or, alternately, terminated) "based upon the four corners of the trust instrument and Ferrante's equitable interest therein." (Casey Answering Br. (Docket No. 22) at 38). This is an entirely different argument from the one passed on by the Court of Appeal, and therefore the bankruptcy court correctly determined that the issue was not precluded.

    **B.**    <u>**The Bankruptcy Court Correctly Concluded That the Seay Lien Automatically Attached to the 518 Property in 2004**</u>.

      The first issue facing the bankruptcy court was whether the abstract of judgment that Col. Seay recorded in 2004 attached to the 518 Property upon its recordation. A judgment lien is created by the recording of an abstract of judgment with the county recorder. Cal. Code Civ. Proc. § 697.310(a). "A judgment lien on real property attaches to all interests in real property in the county where the lien is

7

created[,]" Cal. Code Civ. Proc. § 697.340(a), including a *settlor's* property held in a revocable trust, Cal. Prob. Code § 18200. Because Trust III, an expressly revocable trust, held the 518 Property at the time Col. Seay recorded his lien, the question becomes whether that lien automatically attached upon its recordation. The bankruptcy court determined that the uncontested facts compelled the conclusion that it did.

The bankruptcy court relied on *Bank One Texas v. Pollack*, 24 Cal. App. 4th 973, 29 Cal. Rptr. 2d 510 (1994), to conclude that "[w]hen an abstract of judgment is recorded, the lien attaches to the assets of a settlor's revocable trust." (ER 1571). In *Bank One*, a Texas bank recorded an abstract of judgment against an individual named Sheldon Pollack, whose assets were held in a revocable trust that Pollack settled. *Id.* at 976. Pollack died with little money in his estate, and his creditors disputed the relative priority of their liens. *Id.* at 977. The Court of Appeal discussed the effect on the litigation of California Probate Code sections 18200 and 18201, which the court noted were promulgated "as part of an extensive change and reorganization of the law governing trusts." *Id.* Section 18200 stated that property of a revocable trust "is subject to the claims of creditors of the settlor to the extent of the power of revocation during the lifetime of the settlor." Cal. Prob. Code § 18200. Similarly, section 18201 "permitted a judgment creditor who establishes the inadequacy of estate assets to ignore the trust and reach directly those assets subject to the decedent settlor's power of revocation." *Bank One*, 24 Cal. App. 4th at 980. Ultimately, the court concluded that "[t]he judgment lien attached absolutely to the assets of the Pollack estate and provisionally to the assets of the trust when the abstract of judgment was recorded." *Id.*

In a subsequent decision, the Court of Appeal made clear that its holding in *Bank One* extends to living settlors of solvent estates as well: "Probate Code section 18200 simply provides that all property contained within [a settlor's] revocable trust is subject to recorded liens against them." *Harbor Pipe & Steel, Inc. v. Stevens*, No.

8

G035530, 2006 WL 856215, at *5 (Cal. Ct. App. Apr. 4, 2006); *see also Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) (stating that federal courts "may consider unpublished state decisions, even though such opinions have no precedential value." (footnote omitted)).

      Applying this case to the facts at hand, the bankruptcy court was correct to conclude that the Seay Lien attached automatically to the 518 Property when it was recorded. The Seay Lien was recorded during the period from 2001–2006 in which Trust III owned the 518 Property. Trust III was expressly revocable, and thus under California Probate Code section 18200 and *Bank One*, the Seay Lien attached to the 518 Property as an asset of Ferrante's revocable trust.

      Remar's attempts to distinguish *Bank One* are unconvincing. Although the opinion relied on a different section of the California Probate Code than did the bankruptcy court, the language of the opinion makes clear that the Court of Appeal considered both sections to work in tandem. *See Bank One*, 24 Cal. App. 4th at 980. Moreover, as discussed above, in *Harbor Pipe* the Court of Appeal applied the *Bank One* decision to a case under California Probate Code section 18200. Finally, although it is true that in *Bank One* the settlor's name was clear from the name of the revocable trust, that fact alone cannot distinguish the case. Remar possessed the Trust III instrument, from which the identity of the trust's settlor was clear. It must be expected that a reasonably prudent person would look beyond the *name* of the trust to determine who the settlor is.

      Remar contested the authenticity of the Trust III instrument below and continues to do so on appeal, arguing that from the evidence available to the bankruptcy court, the Trust III instrument was "more likely than not . . . a forgery or falsehood." (Opening Br. at 33). Remar clarified at the hearing that if the Trust III instrument was a forgery, then the deed to the 518 Property was not granted effectively and remained with the 518 Trust.

The bankruptcy court carefully considered the evidence of Trust III's authenticity. On review, it appears that the uncontested facts were sufficient to support the bankruptcy court's determination that the Trust III instrument was authentic. To establish a document's authenticity, its proponent need only "produce evidence sufficient to support a finding that the item is what the proponent claims it is." *United States v. Gadson*, 763 F.3d 1189, 1203 (9th Cir. 2014). "In other words, the party offering the evidence must make a prima facie showing of authenticity 'so that a reasonable juror could find in favor of authenticity or identification.'" *Id.* (quoting *United States v. Yin*, 935 F.2d 990, 996 (9th Cir. 1991)). This is not a heavy burden.

Here, the bankruptcy court relied on the following facts to authenticate the Trust III instrument:

> no alternative Trust III has been proffered; [Debra] Martinez testified as to the genuineness of Mr. Ferrante's signature on our version of Trust III; the existence of strikeouts and interlineations also identified apparently in [Ferrante's] own hand; the contemporaneous Certification and Grant Deed, both notarized, referring to "Trust III"; . . . the "fingerprints" of Mr. Ferrante's lawyers and representatives at the time as shown by facsimile headers and the like . . .; and, finally, the inherent implausibility that an alternative, undiscovered (and yet helpful to Remar) version of Trust III exists or existed.

(ER 1608). A reasonable jury could have relied on any combination of this extensive list of uncontested facts to find that the Trust III instrument was authentic. Thus, the bankruptcy court did not abuse its discretion in authenticating the Trust III instrument.

Even if the bankruptcy court did abuse its discretion in authenticating Trust III, however, the Seay Lien still would have attached to the 518 Property at the time it was recorded in 2004. The bankruptcy court concluded, and the Bankruptcy

Appellate Panel agreed, that the 518 Trust terminated in 1998 when the parties failed to modify the 518 Trust's language to bring it into compliance with newly-promulgated QPRT regulations. *In re Ferrante*, No. AP 8:12-01330-TA, 2015 WL 5064087 at *9. Even if the deed to the 518 Property was never effectively granted to Trust III and remained part of the 518 Trust, by 2004 the 518 Trust was revocable (and terminated) as a matter of law. *Id.* Thus, the Seay Lien attached to the 518 Property automatically. *See Harbor Pipe*, No. G035530, 2006 WL 856215, at *5.

### C. The Bankruptcy Court Correctly Concluded That Remar Was Not a Bona Fide Encumbrancer

Even though the Seay Lien automatically attached to the 518 Property in 2004, Remar's deed of trust could still be senior if Remar took the property as a bona fide encumbrancer. That is, if Remar could not be charged with constructive notice of the Seay Lien, its deed of trust would take precedence. *See* Cal. Civ. Code § 1214. The bankruptcy court determined, however, that the undisputed facts conclusively showed that Remar had constructive notice of the Seay Lien. The Court agrees.

An individual is charged with constructive notice of a fact when she has "actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact." *Bank One*, 24 Cal. App. 4th at 981 (citing Cal. Civ. Code § 19). "[I]n the absence of conflicting knowledge, a good faith encumbrancer is entitled to rely on the recorded chain of title . . . ." *Triple A Mgmt. Co. v. Frisone*, 69 Cal. App. 4th 520, 530, 81 Cal. Rptr. 2d 669 (1999). However, the encumbrancer "is not entitled to interpret ambiguities in [her] own favor nor is [s]he entitled to ignore reasonable warning signs that appear in the recorded documents." *Id.* Based on the uncontested facts, that is exactly what Remar did.

While considering whether to grant the deed of trust, Remar was faced with several "warning signs" in the recorded documents. Grant deeds recorded in the chain of title revealed multiple, rapid conveyances between 2001 and 2009 —

11

including the transfer of the 518 Property from the 518 Trust to Trust III and back again.  (ER 98–101, 135–36, 484–93).  Additionally, documents provided to Remar indicated several different individuals, including Seay, Chacon, and/or Ferrante, were settlor of the 518 Trust.  (ER 497–99, 909–34).  Armed with the foregoing information, had Remar simply researched the name of Trust III's (and possibly 518 Trust's) settlor, it would have discovered the Seay Lien.

The facts in Remar's possession, moreover, indicated that the trust had already terminated.  In 2009, Remar received the 518 Trust instrument, along with several other documents, in support of Mr. Chacon's request for a $1.5 million loan.  (ER 497).  Although the 518 Trust's terms stated that (in accordance with QPRT regulations) the trustee was required to hold the 518 Property for Ferrante's exclusive personal use (ER 504), Remar also possessed a lease granting an exclusive, two-year use of the 518 Property to a third party (ER 497).  Finally, the express terms of the 518 Trust violated the QPRT regulations by permitting Ferrante to buy back the property during the course of the trust.  (ER 505).  Although Remar argued at the hearing that it would be unfair to hold its lien junior to the Seay Lien based on a post-hoc determination that the 518 Trust was revocable, Remar itself could have come to the same conclusion in 2009 had it more carefully examined the documents in its possession.  As the bankruptcy court explained, "[t]here were too many . . . warning signs in documents that Remar concedes receiving for it to be regarded as a bona fide encumbrancer."  (ER 1575).

Remar contends that, in reaching this conclusion, the bankruptcy court engaged in improper fact finding.  (Opening Br. at 17–21).  To the contrary, the bankruptcy court expressly based its decision on the uncontested facts.  ER 1575 (noting that "on this issue there does not appear to be disputed issues of material fact").  Because both parties admitted facts that "created questions about chain of title," as a matter of law Remar was not entitled to ignore those questions.  *Id.*  This

was a proper application of the standard on summary judgment. *See Aguilera v. Baca*, 510 F.3d at 1167.

Remar also contends that the bankruptcy court made an impermissible credibility determination in rejecting a portion of the testimony of Remar's expert witness, Lore Hilburg. (Opening Br. at 21–24). As the bankruptcy court explained during the hearing, it rejected Ms. Hilburg's testimony because her declaration asserted an incorrect legal conclusion — that a reasonably prudent person would not have checked the public records for the 518 Trust and Ferrante individually. (ER 1412–13); see also *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.").

Finally, Remar contends that the bankruptcy court improperly placed the burden of proof on Remar to show that it lacked constructive notice of the Seay Lien. (Opening Br. 17–21). "The general rule places the burden of proof upon a person claiming bona fide purchaser status to present evidence that he or she acquired interest in the property without notice of the prior interest." *First Fid. Thrift & Loan Ass'n v. All. Bank*, 60 Cal. App. 4th 1433, 1442, 71 Cal. Rptr. 2d 295 (1998) (quoting *Gates Rubber Co. v. Ulman*, 214 Cal. App. 3d 356, 366 n.6, 262 Cal. Rptr. 630 (1989)). Remar asserts that the Seay Lien was an equitable lien, and therefore the burden of proof was Col. Seay's. (Opening Br. 23–24). Remar cites to no authority supporting this proposition. Rather, as discussed above, "[a] judgment lien on real property attaches to all interests in real property in the county where the lien is created . . . ." Cal. Civ. Proc. Code § 697.340(a). Because a judgment lien is created by operation of law, Col. Seay held a legal interest in the 518 Property as of the recordation of his lien in 2004. *Cf. In re Cedar Funding, Inc.*, 408 B.R. 299, 314 (Bankr. N.D. Cal. 2009) ("An equitable lien . . . is merely a remedial right, enforceable in equity, to have certain identified property applied to pay a debt."). Under the normal rule, Remar had the burden of proving that it lacked constructive

notice of the Seay Lien.  Because Remar failed to meet its burden, the bankruptcy court properly concluded that the Seay Lien was senior to Remar's deed of trust.

## V. CONCLUSION

Accordingly, the Court **AFFIRMS** the Order.

IT IS SO ORDERED.

DATED: September 13, 2016  _____
MICHAEL W. FITZGERALD
United States District Judge

CC: Bankruptcy Court